**SPENCER FANE LLP**
Eric D. Gere (No. 023226)
2415 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Phone: (602) 333-5430
Facsimile: (602) 333-5431
egere@spencerfane.com

**JASZCZUK P.C.**
Martin W. Jaszczuk *(Pro Hac Vice to be filed)*
Margaret M. Schuchardt *(Pro Hac Vice to be filed)*
Catherine Lusk *(Pro Hac Vice to be filed)*
311 South Wacker Drive, Suite 2150
Chicago, Illinois  60606
Phone: (312) 442-0509
mjaszczuk@jaszczuk.com
mschuchardt@jaszczuk.com
clusk@jaszczuk.com

*Attorneys for Plaintiff HonorHealth*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| HonorHealth, individually and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> Xavier Becerra, Secretary, United States Department of Health and Human Services, <br><br> Defendant. | No. <br><br> **CLASS ACTION COMPLAINT** |

Plaintiff HonorHealth ("HonorHealth" or "Plaintiff"), on behalf of itself and others similarly situated, for its Complaint against Defendant Xavier Becerra ("Defendant"), in his official capacity as the Secretary ("Secretary") of the Department of Health and Human Services ("HSS"), states as follows:

**INTRODUCTION**

1.    This is an action brought by HonorHealth, on behalf of itself and similarly situated entities, to compel the Secretary to accurately compile, record, and transmit the data

reported by HonorHealth and other providers relating to the costs they incur in connection with Nursing and Allied Health ("NAH") programs.

2. Plaintiff is an Arizona-based non-profit community healthcare system serving the greater Phoenix area. Plaintiff's network of healthcare providers offers medical services to enrollees of Medicare Advantage ("MA") plans pursuant to contractual agreements between HonorHealth and various Medicare Advantage organizations ("MA Organizations") that administer the MA plans. Under the terms of these agreements, in general, the MA Organizations are required to follow Medicare guidelines when making payments to HonorHealth, including reimbursing HonorHealth for costs associated with HonorHealth's NAH programs.

3. Pursuant to guidance issued by the Centers for Medicare and Medicaid Services ("CMS"), MA Organizations are required to reimburse providers for NAH expenses associated with services to MA enrollees, where the providers administer NAH programs that are approved for Medicare reimbursement. Throughout the relevant time period, HonorHealth engaged in approved NAH activities that are subject to Medicare reimbursement pursuant to 42 C.F.R. § 413.85. Accordingly, HonorHealth's NAH costs must be reimbursed by MA Organizations pursuant to the parties' agreements and CMS requirements. Nevertheless, NAH expenses have not been included in the payments made to HonorHealth by the MA Organizations.

4. HonorHealth has not received NAH reimbursements from any of the MA Organizations it has contracted with, and the oversight has occurred across successive cost reporting periods. Plaintiff's investigation indicates that the origin of the omission is the Medicare Administrative Contractors' ("MAC") failure to include HonorHealth's NAH expenses—as reported on HonorHealth's cost reports—in the provider-specific file the MACs are required to create. Because the provider-specific file provides the basis upon which Medicare Advantage payment amounts are calculated, the result of this omission is that the payments the MA Organizations make to HonorHealth do not include NAH reimbursement.

2

PH 3488879.1

5. HonorHealth seeks an order (1) directing the Secretary to review and correct the processing, recording, and transmittal of NAH data for cost reporting periods covering the last six years; (2) directing MA Organizations to remit reimbursement for NAH expenses for cost reporting periods over the last six years pursuant to the corrected data, and (3) directing the Secretary to correctly process, record, and transmit NAH data going forward.

## PARTIES

6. Plaintiff HonorHealth is a nonprofit health system with 6 hospitals, 70 primary and specialty care clinics, a cancer care network, research, and community services. During the relevant timeframe, several of the hospitals within HonorHealth's network have been and/or are currently entitled to Medicare reimbursement of NAH expenses pursuant to 42 C.F.R. § 413.85. However, Plaintiff has not been reimbursed for these expenses by MA Organizations. Plaintiff brings this action on behalf of a proposed class of all qualifying hospitals that have similarly not been reimbursed for NAH expenses by MA Organizations.

7. Defendant Xavier Becerra is the Secretary of the United States Department of Health and Human Services. HonorHealth brings this action against the Defendant Secretary in his official capacity only.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action pursuant to the Administrative Procedure Act, 5 U.S.C. §702, *et. seq.*, which authorizes relief for administrative agency injustice(s). In this case, the injustice is the incorrect and incomplete collection, recording and transmittal of NAH data by Medicare Administrative Contractors operating under the direction of the Department of Health and Human Services, which has caused Plaintiff and members of the putative class substantial harm, and for which this Court can grant relief.

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States as set forth above.

10. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this district.

**FACTUAL BACKGROUND**

11. The American healthcare system relies upon nurses and other non-physician clinical healthcare personnel to treat patients in our nation's hospitals. Many of these personnel receive their clinical training in accredited hospital-operated NAH professional educational programs. Recognizing the importance of these hospital-operated programs in training the nation's nurses and paramedical personnel, Congress has commanded the Medicare program to pay its share of the cost of these educational programs, including all direct and indirect costs a hospital incurs in operating such programs.

12. Title XVIII of the Social Security Act establishes a system of federally funded health insurance for certain elderly and disabled persons, commonly known as Medicare. 42 U.S.C. § 1395, *et seq*. Part C of the Medicare Program, known as Medicare Advantage, allows Medicare beneficiaries to obtain their medical benefits through private managed health care organizations ("MA Organizations"). MA Organizations enter into contracts with CMS, under which CMS pays each MA Organization a set amount for each Medicare beneficiary it enrolls. In exchange, the MA Organization agrees to provide its Medicare enrollees with, at a minimum, all the benefits the beneficiary would be entitled to receive under the original Medicare program. The contracts also require MA Organizations to comply with the Medicare statutes and regulations and CMS rules, including those governing payments to providers.

13. In order to incentivize hospitals to control their costs, in 1983 Congress established the inpatient prospective payment system ("IPPS"), pursuant to which most acute care hospitals are reimbursed through Medicare for inpatient hospital operating and capital costs according to prospectively determined payment rates. 42 U.S.C. § 1395ww(d). Under IPPS, Medicare pays predetermined, standardized amounts per discharge, subject to certain payment adjustments, rather than the actual costs incurred to provide inpatient services. 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412.

14. Congress excluded costs for educating and training nursing and other non-physician clinical personnel from the IPPS reimbursement system. Hospitals are instead

4

reimbursed for NAH educational programs on a reasonable cost basis as determined on the hospital's cost reports that are submitted to MACs ("Cost Reports"). The Cost Reports contain provider information such as facility characteristics, utilization data, cost and charges by cost center (in total and for Medicare), Medicare settlement data, and financial statement data. The information in the Cost Reports includes NAH expense data.

15. This cost reimbursement methodology is commonly referred to as "pass-through" reimbursement because the costs of these programs bypass the IPPS methodology and are paid on a reasonable cost basis. Medicare regulations further provide specific guidance as to how the reimbursement is to be calculated and paid. *See* 47 CFR §§ 413.85, 413.87.

16. Section 413.85 of the Secretary's regulations entitles providers to reimbursement for the "net costs" of their approved NAH educational programs, "subject to apportionment for Medicare utilization." 42 C.F.R. § 413.85(d).

17. The Secretary contracts with MACs to administer payments to hospitals participating in the Medicare program. 42 U.S.C. § 1395h. Health care providers submit their costs and expenses to the MACs in their Cost Reports. The MACs, in turn, input the data from the Cost Reports into a Provider-Specific File. The Provider-Specific File underlies the computations for the Prospective Payment System, as well as pass-through payments like NAH.

18. The information in the Provider-Specific File is then input into a system called the Web Pricer ("Pricer"). The Pricer determines the amount of payment applicable to a particular hospital for a particular treatment.

19. The Medicare Claims Processing Manual ("Manual")—which sets forth CMS directions to the MACs for claims processing—explains, in pertinent part, as follows:

> **20.2.3 - PPS Pricer Program**
> **(Rev. 1, 10-01-03)**
>
> **A3-3615.3, A3-3656.3**

5

> The CMS provides a Pricer program to determine the price upon which to base payment under prospective payment. A separate Pricer installation guide is provided. The A/B MAC (A) uses the Pricer appropriate for the date of discharge.
> After GROUPER determines the DRG, the A/B MAC (A) 's system calls the Pricer program. Pricer determines the price to pay and prepares a report.
>
> \*\*\*
>
> The A/B MAC (A) maintains the provider-specific file, (PROV file). This contains information about the facts specific to the provider that affect computations, e.g., effective dates for PPS, type of provider (for application of special computation rules), census division, MSA, adjusted cost per discharge, disproportionate share adjustment percentage, and capital data.
> Pricer also calculates the disproportionate share adjustment and adds it to the DRG payment. **Correct calculation depends upon the accuracy of related information the A/B MAC (A) includes in the PRICER PROV file.**
>
> \*\*\*
>
> **20.2.3.1 - Provider-Specific File**
> **(Rev. 3836, Issued: 08-18-17, Effective: 11-21-17, Implementation: 11-21-17)**
> The PROV file contains needed information about each provider to enable the pricing software to calculate the payment amount. The FI maintains the accuracy of the data in accordance with the following criteria.
>
> \*\*\*
>
> The format and data required by the PRICER program and by the provider-specific file is found in Addendum A.

(Manual, §§ 20.2.3, 20.2.3.1) (emphasis added.)

20.    Addendum A of the Manual goes on to describe how NAH data must be input into the Pricer:

/ / /

/ / /

/ / /

6

| Data Element | File Position | Format | Title | Description |
|---|---|---|---|---|
| 42 | 179-184 | 9(4)V9(2) | Total Pass Through Amount, Including Miscellaneous | Per diem amount based on the interim payments to the hospital (See the Provider Reimbursement Manual §2405.2.) Must be at least equal to the three pass through amounts listed above. Include pass through amount for Domestic N95 Respirator Procurement. The following are included in total pass through amount in addition to the above pass through amounts. Certified Registered Nurse Anesthetists (CRNAs) are paid as part of Miscellaneous Pass Through for rural hospitals that perform fewer than 500 surgeries per year, and Nursing and Allied Health Professional Education when conducted by a provider in an approved program. Do not include amounts paid for Indirect Medical Education, Hemophilia Clotting Factors, DSH adjustments, or Allogeneic Stem Cell Acquisition. Zero-fill if this does not apply. |

(Manual, Addendum A.)

21. In summary, the NAH information included in the providers' Cost Reports should be input into the Provider-Specific File and, in turn, included in the calculations made by the Pricer.

22. MA Organizations utilize the Pricer to calculate the amount of payments to make to hospitals for a particular patient stay. MA Organizations input the patient and treatment information, and the Pricer determines the amount to be paid. As reflected in CMS guidance, NAH expenses should be included in the Pricer calculations for MA Organizations. The CMS Pricer instructions to MA Organizations explain:

**A Note on Pass Through Payments in the Inpatient PPS PC Pricer:**
There are certain hospital costs that are excluded from the IPPS payment and are paid on a reasonable cost basis. These are known as pass-throughs and they are as follows:

- DGME
- Capital for the first 2 years of a new hospital (generally 85% of Medicare allowed capital costs)
- Organ acquisition costs (excludes bone marrow transplants)

7

- CRNA's- for small rural hospitals
- Nursing and allied health education costs

Pass-through payments under Medicare FFS are usually paid on a bi-weekly interim basis based upon cost determined via the cost report (or data received prior to cost report filing.) Pass-through payments are computed on the cost report based upon Medicare utilization (per diem cost for the routine and ancillary cost/charge ratios.) In order for the PC Pricer user to estimate what the pass-through payments are, it uses the pass-through per diem fields that are outlined in the provider specific file.

It is important to note that Medicare Advantage plans are not required to pay certain pass-through payments because the hospital is already being reimbursed for them through bi-weekly payments or through the cost report (as stated above) by their Medicare FFS contractor.

Therefore, for PC Pricer purposes, when a 'Y' is entered in the HMO PAID CLAIM field, organ acquisition and graduate medical education costs are omitted. The PASS THRU AMT is calculated by converting the PASS THRU AMT to a per diem and multiplying it by the number of days for the stay.

(Data Entry and Calculation Steps For the Inpatient PPS PC Pricer; Last Update: 1/16/2020.)

23.  Additional CMS guidance documents describe how the NAH payment amounts should be calculated for the purposes of MA Organizations:

**Payment information for MA plans:**

\*\*\*

There are 2 nursing and allied health (NAH) education payments reflected on the hospital cost reports:

1) cost based NAH amount – MA plans must pay to non-contracted hospitals

2) BBRA NAH add-on taken from DGME payments – MA plans do not have to pay to non-contracted hospitals. This is paid by MACs on behalf of MA members.

These rules only apply to PPS hospitals, not cost hospitals such as critical access hospitals.

8

Item #1 is included on the cost reports on WS E Part A lines 57 and 58. Item #2 is on line 53 that says "Nursing and Allied Health Managed Care."

The DRG is determined by the GROUPER program based on patient information on the hospital claim. The payment is determined using the PRICER program. Hospital specific data is contained on the Provider Specific Files. The PRICERs on the Internet already contains the provider specific files and can be found on
http://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/PCPricer/inpatient.html

(MA Payment Guide for Out of Network Payments, p. 7.)

24. To briefly summarize, for NAH-approved hospitals like Plaintiff and class members, the MA payment amount calculated in the Pricer should include an amount for NAH expenses. As set forth above, CMS directives and guidance explain how NAH per diem payments owed by Medicare Advantage organizations to providers should be calculated via the Pricer.

25. Put simply, the cost-based NAH amount that MA plans must pay to hospitals is set forth on the hospital Cost Report, Worksheet E, Part A Lines 57 and 58. The NAH per diem is then calculated by dividing this amount by the number of Medicare Title XVIII days set forth on Worksheet S-3, Line 14, Column 6. The Pricer uses the pass-through per diem fields that are outlined in the Provider-Specific File to calculate the NAH payment.

26. The following example demonstrates how NAH *should* be calculated, when the Cost Report data is properly input into the Pricer via the Provider-Specific File. In short, the total routine and ancillary cost pass-through amounts on Worksheet E (Part A Line 57 + Line 58) of the Cost Report are added together, and then divided by the number of Medicare Title XVIII days (Worksheet S-3, Line 14, Col 6).

27. For this provider, the total routine and ancillary cost pass-through amounts on Worksheet E of the Cost Report are $1,205,865.

| 57 | Routine service other pass through costs (from Wkst. D, Pt. III, col. 9, lines 30 through 35). | 1,117,855 |
| 58 | Ancillary service other pass through costs (from Wkst. D, Pt. IV, col. 11, line 200) | 88,010 |

28. The Medicare inpatient days for Title XVIII total 29,231.

| Component | | Wksht. A Line No. | No. of Beds | Bed Days Available | CAH Hours | Inpatient Days / Outpati | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Title V | Title XVIII | Tit |
| | | 1 | 2 | 3 | 4 | 5 | 6 | |
| 1 | Hospital Adults & Peds. (columns 5, 6, 7 and 8 exclude Swing Bed, Observation Bed and Hospice days) (see instructions for col.2 for the portion of LDP room available beds) | 30.00 | 425 | 155,125 | | | 25,686 | |
| 2 | HMO and other (see instructions) | | | | | | 32,075 | |
| 3 | HMO IPF Subprovider | | | | | | | |
| 4 | HMO IRF Subprovider | | | | | | | |
| 5 | Hospital Adults & Peds. Swing Bed SNF | | | | | | | |
| 6 | Hospital Adults & Peds.Swing Bed NF | | | | | | | |
| 7 | Total Adults and Peds. (exclude observation beds) (see instructions) | | 425 | 155,125 | | | 25,686 | |
| 8 | Intensive Care Unit | | 24 | 8,760 | | | 1,099 | |
| 9 | Coronary Care Unit | | 40 | 14,600 | | | 2,446 | |
| 10 | Burn Intensive Care Unit | | | | | | | |
| 11 | Surgical Intensive Care Unit | | | | | | | |
| 12 | Other Special Care | | | | | | | |
| 12.15 | Neonatal ICU | 35.15 | 47 | 17,155 | | | | |
| 13 | Nursery | 43.00 | | | | | | |
| 14 | Total (see instructions) | | 536 | 195,640 | | | 29,231 | |
| 15 | CAH visits | | | | | | | |

29. Accordingly, the total per diem pass-through rate for NAH should be $1,205,865 divided by 29,231 days, or **$41.25** per inpatient day. When entered into the Pricer, this is the pass-through amount remaining after deduction of the DGME and organ acquisition pass-through amounts (as these latter amounts are not paid by MAs):

**Pass-through amounts**

| | |
|---|---|
| Pass-through amount allogeneic stem cell | $0.00 |
| Total pass-through & miscellaneous | $83.18 |
| Pass-through amount capital | -- |
| Pass-through amount direct medical education | $31.83 |
| Pass-through amount organ acquisition | $10.10 |
| Estimated total pass-through amount | **$41.25** |

10

30. In contrast, the following example is how the NAH pass-through has been calculated for HonorHealth and other class member claims.

31. In this example, the total routine and ancillary cost pass-through amounts on Worksheet E is $86,979.

| | |
|---|---|
| 56 Cost of physicians' services in a teaching hospital (see instructions) | |
| 57 Routine service other pass through costs (from Wkst. D, Pt. III, col. 9, lines 30 through 35). | |
| 58 Ancillary service other pass through costs (from Wkst. D, Pt. IV, col. 11, line 200) | 86,979 |
| 59 Total (sum of amounts on lines 49 through 58) | 42,400,565 |

32. The total applicable Medicare inpatient days for Title XVIII is 13,452 days.

| Component | Wksht. A Line No. | No. of Beds | Bed Days Available | CAH Hours | Inpatient Days / Outpatient V | | |
|---|---|---|---|---|---|---|---|
| | | | | | Title V | Title XVIII | Title X |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 1 Hospital Adults & Peds. (columns 5, 6, 7 and 8 exclude Swing Bed, Observation Bed and Hospice days) (see instructions for col.2 for the portion of LDP room available beds) | 30.00 | 218 | 79,570 | | | 11,577 | 13,8 |
| 2 HMO and other (see instructions) | | | | | | 17,025 | |
| 3 HMO IPF Subprovider | | | | | | | |
| 4 HMO IRF Subprovider | | | | | | | |
| 5 Hospital Adults & Peds. Swing Bed SNF | | | | | | | |
| 6 Hospital Adults & Peds.Swing Bed NF | | | | | | | |
| 7 Total Adults and Peds. (exclude observation beds) (see instructions) | | 218 | 79,570 | | | 11,577 | 13,8 |
| 8 Intensive Care Unit | | 40 | 15,872 | | | 1,875 | 4,9 |
| 9 Coronary Care Unit | | | | | | | |
| 10 Burn Intensive Care Unit | | | | | | | |
| 11 Surgical Intensive Care Unit | | | | | | | |
| 12 Other Special Care | | | | | | | |
| 13 Nursery | 43.00 | | | | | | |
| 14 Total (see instructions) | | 258 | 95,442 | | | 13,452 | 18,8 |
| 15 CAH visits | | | | | | | |

33. Accordingly, the total per diem pass-through rate for NAH should be $86,979 divided by 13,452 days, or **$6.47** per inpatient day.

34. However, in the above case, the pass-through was calculated in the Pricer as $0:

///

///

///

11

| Pass-through amounts | |
|---|---|
| Pass-through amount allogeneic stem cell | $0.00 |
| Total pass-through & miscellaneous | $18.92 |
| Pass-through amount capital | -- |
| Pass-through amount direct medical education | $18.92 |
| Pass-through amount organ acquisition | $0.00 |
| Estimated total pass-through amount | **$0.00** |

35. It appears that HonorHealth's inability to obtain reimbursement for NAH expenses from MA Organizations is related to the data input by the MACs. There is at least one MAC that adheres to the above-referenced directives and guidelines, resulting in NAH data being properly included in Pricer calculations (as denoted in ¶¶ 26-29 above); the remaining MACs have not been including the NAH data in the Provider-Specific Files and, as a result, the Pricer is not including NAH amounts in its payment calculations (as denoted in ¶¶ 30-34 above). This problem persists in all of the HonorHealth MA claims that were subject to NAH reimbursement.

## **ADMINISTRATIVE REVIEW**

36. Normally, a provider that is dissatisfied with a reimbursement determination may request a hearing before the Provider Reimbursement Review Board ("PRRB"), by filing an appeal within one hundred eighty (180) calendar days from the date of receipt of its Medicare program reimbursement. *See* 42 U.S.C. §1395oo(a).

37. In this case, however, there has been no determination that the Plaintiff does not qualify for NAH payments. The NAH reimbursements have simply not been paid by MA Organizations, and neither the MA Organizations nor the MACs have provided a reasoned explanation or basis for the non-payment. Accordingly, there is no decision to appeal, and no clear path for administrative review.

38. Contrary to statutory and regulatory directives and CMS guidance, Defendant Secretary has repeatedly and consistently failed to include NAH data in the Provider-Specific

12

Files he is required to maintain, leading to erroneous payments by MA Organizations to HonorHealth hospitals and the hospitals in the putative class.

## **CLASS ALLEGATIONS**

39.     Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), HonorHealth brings this action on behalf of all entities similarly situated throughout the United States.

40.     The class HonorHealth seeks to represent is tentatively defined as:

> Hospitals administering approved Nursing and Allied Health ("NAH") programs that have not been reimbursed for NAH expenses by Medicare Advantage Organizations within the last six years (the "Class").

41.     The following are excluded from the Class: (1) any judge presiding over this action and members of his or her family; (2) Defendant, the Centers for Medicare and Medicaid Services, any Medicare Administrative Contractor, and any Medicare Advantage Organization; (3) Plaintiff's counsel and Defendant's counsel; and (4) the legal representatives, successors, and assigns of any such excluded persons. The Class as defined above is identifiable through Medicare records that will be obtained through discovery.

42.     The Class is expected to exceed 40 members; in fact, it is estimated that hundreds of providers have been impacted by Defendant's conduct described herein. Accordingly, individual joinder of Class members is impracticable.

43.     There are questions of law and fact common to the claims of Plaintiff and Class members, including but not limited to the following:

a.     Whether Defendant has an obligation to properly process, record, and transmit the Class members' NAH expenses;

b.     Whether Defendant breached his obligation to properly process, record, and transmit the Class members' NAH expenses; and

c.     The manner in which Class members' NAH expenses are to be calculated for reimbursement by MA Organizations.

44. Plaintiff's claims are typical of the claims of Class members because, among other things, all Class members were comparably injured by Defendant's conduct, as described above.

45. Plaintiff and its counsel will fairly and adequately protect the interests of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages it has suffered are typical of other Class members. Plaintiff has retained counsel competent and experienced in class action litigation, and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously for the benefit of all Class members.

46. A class action is an appropriate method for the fair and efficient adjudication of this controversy, because prosecuting separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant. Moreover, Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

## COUNT I:  BREACH OF NAH RECORDKEEPING OBLIGATIONS

47. Plaintiff HonorHealth incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

48. Plaintiff and members of the Class have incurred and reported qualifying NAH expenses and have otherwise satisfied all requirements in order to be entitled to receive NAH reimbursement.

49. Defendant breached its obligations to Plaintiff and Class members when it failed to properly process, record, and transmit Plaintiff's and Class members' NAH data, resulting in underpayment of NAH expenses by MA Organizations.

50. As a proximate result of Defendant's failure to properly process, record, and transmit Plaintiff's and Class members' NAH data, Plaintiff and Class members have been

damaged in that they have not received the funds to which they are entitled from MA Organizations.

51. Accordingly, Plaintiff and Class members have been aggrieved by the actions of Defendant, and are entitled to declaratory and injunctive relief directing the Defendant to rectify the wrongs described herein.

## **DECLARATORY AND INJUNCTIVE RELIEF**

52. Plaintiff HonorHealth incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

53. Plaintiff and Class members are entitled to declaratory and injunctive relief pursuant to 5 U.S.C. § 702, 28 U.S.C. § 2201, and Fed. R. Civ. P. 23 because there is an actual controversy between the Defendant, on one hand, and Plaintiff and the Class members on the other, who have been uniformly adversely affected and/or aggrieved by Defendant's practices as described herein.

54. Plaintiff asks the Court to declare that the Defendant has failed and continues to fail to properly process, record, and transmit Plaintiff's and Class members' NAH data, and to direct the Defendant to review and correct the processing, recording, and transmitting of NAH data for cost reporting periods for the last six years, direct the MA Organizations to remit reimbursement for NAH payments under Medicare Advantage programs for cost reporting periods for the last six years pursuant to the corrected data, and direct the Defendant to correctly process, record, and transmit NAH data for future cost reporting periods.

## **RELIEF REQUESTED**

Wherefore, Plaintiff HonorHealth, on its own behalf and on behalf of Class members, respectfully requests relief as follows:

   a. An order certifying this case as a class action, designating HonorHealth as the named representative of the Class, and appointing HonorHealth's counsel to represent the Class;

   b. directing the Defendant to review and correct the processing, recording, and transmittal of NAH data for cost reporting periods for the last six years;

c. directing MA Organizations to remit reimbursement for NAH expenses to Plaintiff and Class members for cost reporting periods for the last six years pursuant to the corrected NAH data;

d. directing the Defendant to correctly process, record, and transmit NAH data for future cost reporting periods; and granting such other and further relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED this 25th day of July, 2024.

                              SPENCER FANE LLP

                              *s/ Eric D. Gere*
                              Eric D. Gere
                              2415 E. Camelback Road, Suite 600
                              Phoenix, Arizona 85016

                              JASZCZUK P.C.
                              Martin W. Jaszczuk
                              Margaret M. Schuchardt
                              Catherine Lusk
                              311 South Wacker Drive, Suite 2150
                              Chicago, Illinois 60606

                              *Attorneys for Plaintiff HonorHealth*