**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

HonorHealth,

Plaintiff,

v.

Xavier Becerra, *et al.*,

Defendants.

No. CV-24-01837-PHX-JJT

**ORDER**

Before the Court is Plaintiff HonorHealth's Motion for Summary Judgment (Doc. 54, Pl. Mot.) and Defendant United States Department of Health and Human Services Secretary's Cross-Motion for Summary Judgment (Doc. 63, Def. Mot.), both of which have been fully briefed. No party has requested oral argument. LRCiv 7.2(f).

As a preliminary matter, the Court grants Plaintiff's unopposed Motion for Leave to File Sur-Reply in Response to Defendant's Cross-Motion for Summary Judgment (Doc. 68) and considers that sur-reply with all other briefing. The Court also overrules Plaintiff's objection to Defendant's controverting statement of facts as being "lengthy" and "unsupported" (Doc. 66 at 1–2) because each paragraph is numbered, pertains to a particular material fact, and contains citations to portions of the record or published material, thereby comporting with LRCiv 56.1.

. . .

. . .

## I. BACKGROUND[1]

At the heart of this action is Medicare's practice of processing hospital expense data through a complex payment system that is nearly incomprehensible to those not immersed in the world of Medicare law. *See, e.g.*, 42 U.S.C. § 1395ww; 42 C.F.R. § 412.116(a). Much to their credit, the parties have endeavored to explain that system in painstaking detail. For the purpose of this Order, though, the Court provides only a high-level review of the system for context.

There are three actors involved in the payment system at issue here. The first is Medicare, "a federally funded health insurance program for the elderly and disabled" that is governed, in part, by regulations issued by Defendant. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506–07 (1994). The second is a group of private companies that offer health insurance plans akin to Medicare called Medicare Advantage plans. *See* 42 U.S.C. § 1395w-23. Those companies, which the parties call Medicare Advantage Organizations, enter private contracts with hospitals and negotiate their own payment structures. The third is Plaintiff, a hospital network in the Phoenix area that contracts with Medicare and Medicare Advantage Organizations.

For hospitals contracted (or "in-network") with Medicare like Plaintiff, Medicare must pay a portion of their operating expenses. As relevant here, that payment obligation includes the cost of a hospital's "Nursing and Allied Health" ("NAH") education program. NAH expenses are paid on a "pass-through" basis along with other education expenses and ancillary programs like organ acquisition, all of which constitute "pass-through amounts." 66 Fed. Reg. at 3358; 42 C.F.R. § 413.85. Because Medicare already compensates ***in-network*** hospitals for NAH expenses and other pass-through amounts not relevant here, Medicare Advantage Organizations are not obligated by law to do so. However, when a hospital is ***out-of-network***, a Medicare Advantage Organization must compensate that hospital for a portion of its NAH expenses.

. . .

[1] When referring to papers submitted by the parties, the Court cites to the page number as generated by the Electronic Court Filing system, not the parties' own page demarcation.

To obtain payment from Medicare and Medicare Advantage Organizations, a hospital submits immense amounts of financial data to one of Medicare's "administrative contractors" who process that data into a file. Based on Defendant's guidelines, contractors record NAH expenses in a data entry field known as "Data Element 42" that totals all pass-through amounts. At some point, though, Defendant instructed contractors to combine a hospital's NAH expenses with the cost of other education programs in a single data entry known as "Data Element 40."

After contractors input the hospital's financial data in a file, they export the file to an online public tool called the "Pricer" that estimates Medicare's payment obligation to the hospital. The Pricer can also estimate what a Medicare Advantage Organization may owe a hospital when a specific filter is applied. That filter excludes Data Element 40 from the payment estimation. According to Plaintiff, the Medicare Advantage Organizations that contract with Plaintiff use the Pricer filter to estimate their payment obligation to Plaintiff.

Plaintiff reported NAH expenses to its assigned contractor for the 2018 through 2023 fiscal years. The contractor correctly recorded and calculated the NAH expenses but, pursuant to Defendant's instructions, combined the NAH expenses with other education expenses in Data Element 40 that were later omitted from the Pricer filter. As a result, Medicare Advantage Organizations did not compensate Plaintiff for its NAH expenses.

Plaintiff does not sue its contracted Medicare Advantage Organizations or Medicare for payment of the unpaid NAH expenses. Rather, Plaintiff challenges Defendant's practice of instructing contractors to combine NAH expenses with other educational expenses in Data Element 40 that causes the Pricer filter to omit NAH expenses from the payment estimation for its contracts with Medicare Advantage Organizations. This practice, according to Plaintiff, effectively treats NAH expenses as non-compensable contrary to law and is arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Plaintiff seeks declaratory and injunctive relief that would compel Defendant to record past and future NAH expenses in a manner that reflects them on the Pricer when the filter is applied. (Pl. Mot. at 3, 5.) Defendant cross-moves for

summary judgment based on Plaintiff's lack standing to challenge Defendant's actions or, alternatively, lack of evidence of an APA violation. (Def. Mot. at 3.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When, as here, "parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation modified).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id*. at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the nonmoving party's favor, and regard as true the nonmoving party's evidence as long as it is supported by affidavits or other evidentiary

material. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Anderson*, 477 U.S. at 255. However, the nonmoving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.") (citation omitted).

## III. ANALYSIS

Plaintiff moves for summary judgment on its APA claim because "[n]othing in the governing statutes, regulations, or CMS[2] guidance authorizes treating NAH expenses as" other education program expenses. (Pl. Mot. at 8.) Rather, "rules and guidance" treat NAH expenses as distinct and require them to be recorded as a payable pass-through amount. (Pl. Mot. at 8.) According to Plaintiff, Defendant's practice of eliminating that distinction is contrary to governing Medicare law and causes Medicare Advantage Organizations to omit payment to Plaintiff for its NAH expenses.

Both in response to Plaintiff's summary judgment motion and in cross-moving for its own summary judgment, Defendant argues that Plaintiff lacks standing to sue Defendant. (Def. Mot. at 18–20.) Under standing principles, there are "constitutional limitations" imposed by Article III that, at a minimum, requires:

> (1) that the plaintiff have suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely,

[2] Centers for Medicare and Medicaid Services (CMS) is an agency within the Department of Health and Human Services that administers Medicare.

> as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear*, 520 U.S. 154, 167 (1997) (citation omitted). "[E]ach element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id*. at 167–68 (citation modified).

Defendant first contends that Plaintiff fails to establish an injury in fact. According to Defendant, Medicare law creates no obligation on the part of Medicare Advantage Organizations to pay ***in-network*** hospitals like Plaintiff any NAH amounts. And even if those Medicare Advantage Organizations privately negotiated with Plaintiff to pay those amounts, Plaintiff produces no evidence of that obligation. (Def. Mot. at 18–19.) Without establishing the obligation either in law or by contract, Plaintiff cannot show that it suffered "an invasion of a legally protected interest" that forms an injury in fact. (Def. Mot. at 19 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).)

Plaintiff argues that "Medicare law does not exclude NAH costs from the obligation of [Medicare Advantage Organizations]. (Doc. 65, Pl. Resp., at 4.) But, as Plaintiff concedes, that obligation imposed on Medicare Advantage Organization is owed to ***out-of-network*** hospitals, and Plaintiff is ***in-network***. (Pl. Resp. at 4.) Whatever obligation Medicare Advantage Organizations might owe a class of hospitals that does not include Plaintiff has no bearing on the question of Plaintiff's standing here. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 419 (2013) (finding that a governmental policy that does not regulate the complained-of action fails to provide a basis for standing).

Next, Plaintiff maintains that it produced affidavit testimony that establishes an economic injury to satisfy Article III standing. The Court presumes Plaintiff refers to the declaration of its network director Jenifer Hendrix that it produced with the targeted purpose of "establish[ing] [Plaintiff's] injury in fact". (Doc. 55 at 11 ¶ 11). While affidavits or other evidence may establish a genuine issue of material fact for trial, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990), Ms. Hendrix's declaration does not. To be

sure, her declaration does state that Plaintiff has contracts with Medicare Advantage Organizations, that payments made by those organizations are a "material source of revenue" for Plaintiff, and those organizations have not reimbursed Plaintiff for NAH expenses. (Doc. 55 at 11 ¶¶ 4–6, 8.) But missing from Ms. Hendrix's declaration is a statement that those contracts required the Medicare Advantage Organizations to reimburse the NAH expenses at all.

This is no superfluous detail; it is the lynchpin of Plaintiff's purported legal interest in the payment of NAH expenses from Medicare Advantage Organizations. Without any evidence of that commitment—either by Ms. Hendrix's declaration of it or production of actual contracts so stating, for example—Plaintiff's entitlement to being paid by Medicare Advantage Organizations is nothing more than conjecture. More is required to establish an injury in fact at this stage. The injury must be concrete; "that is, it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), *as revised* (May 24, 2016). Without a concrete injury, this Court must refrain from scrutinizing Defendant's conduct no matter what it may have led non-party Medicare Advantage Organizations to believe about Plaintiff's NAH expenses. *Clapper*, 568 U.S. at 408 ("The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches.").

In moving for summary judgment and in defending against Defendant's summary judgment motion, Plaintiff was tasked to "make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. While standing to sue is essential to Plaintiff's claim, *Clapper*, 568 U.S. at 412, Plaintiff fails to show that it exists here.

**IT IS ORDERED** granting Plaintiff's Motion for Leave to File Sur-Reply in Response to Defendant's Cross-Motion for Summary Judgment (Doc. 68).

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Summary Judgment (Doc. 54).

. . .

**IT IS FURTHER ORDERED** granting Defendant's Cross-Motion for Summary Judgment (Doc. 63).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendant and close this case.

Dated this 31st day of August, 2026.

Honorable John J. Tuchi
United States District Judge